Robinson, J.
 

 This is an original action in mandamus on behalf of the relator to compel the respondent, as superintendent of insurance of Ohio, to issue a license authorizing relator to transact business as a fire insurance company in this state upon a plan which permits it to write a policy containing the following clause:
 

 “At
 
 the end of the policy year named herein, if this policy shall so long remain in force, there shall be distributed in cash such proportion of the earned divisible surplus contributed by this policy during such year as the board of directors of this company shall set aside for that purpose, according to such principles and for methods as may from time to time be adopted by this company
 
 *406
 
 for sneh distribution, which principles and methods are hereby ratified and accepted by and for every person who shall have or claim interest under this contract.”
 

 A general demurrer was filed to the petition by the respondent. '
 

 The relator is a stock fire insurance company, and had heretofore transacted business in Ohio as a fire insurance company under licenses issued by former superintendents of insurance, as prescribed in Paragraph 1, Section 9607-2, General Code, and is seeking a license to continue such business.
 

 Many fire insurance companies are transacting business in this state under that section, but no other company has transacted or attempted to transact the business of fire insurance on the plan described in relator’s petition.
 

 Respondent, as superintendent of insurance, denied license to the relator upon the ground that the provision in the policy quoted above, in connection with the practice of the company during the years that it has transacted business in Ohio of paying to each policy holder at the end of each policy year a “proportion of the earned divisible surplus” equal to 20 per cent, of the premium paid by such policy holder, amounts to a rebate as contemplated and prohibited by Section 9589-1, General Code, which provides that “no corporation # * * engaged in the state of Ohio in the * * * insurance business * * * shall pay, allow or give, or offer to pay, allow or give, directly or indirectly, as inducements to insurance * * * any rebate of premium payable on the policy, * * * or any valuable consideration or inducement whatso
 
 *407
 
 ever not plainly specified in the policy or contract of insurance,” it being the position of the respondent that the provision in the policy violates that section in two respects: First, that, considered in the light of the fact that during the period the company has operated in Ohio it has paid to each policy holder at the end of the policy year a portion of its divisible surplus equal to 20 per cent, of the premium paid, the provision amounts to a payment of such sum as an inducement to insurance; and, second, amounts to the payment of a valuable consideration “not plainly specified in the policy or contract of insurance,” in violation of the terms of that section, and we must concede that the interpretation given to the statute by the superintendent of insurance, based upon the face of the statute alone, seems to be the most plausible, and if we concede that the purpose of this legislation was to safeguard fire insurance companies against competition in rates, and that the erection of the machine which it designated a rating bureau, through which the rates of all fire insurance companies are fixed, was for the purpose of preventing any company from mating a better rate than any other, then the interpretation of the insurance commissioner' must be adopted. If, on the other hand, it was the purpose of the Legislature to secure an equality of treatment by each fire insurance company between the small property owner and consequently small insurer, and the large property owner and consequently large insurer, and the act was enacted not with a view to protecting fire insurance companies from each other, but for the purpose of protecting the in
 
 *408
 
 sured from unjust and unfair discrimination by the insurer, and had for its purpose the protection of the small insurer against an unjust proportion of the burden of insurance, then a different interpretation would seem to be required.
 

 In interpreting a statute the court will of course give to its language the ordinary and usual meaning and signification, but where the Legislature has interpreted its own language, and by such interpre - tation has clearly shown it did not use certain words in their ordinary meaning, a court will accept the Legislature’s own interpretation.
 

 The particular section here under consideration was first enacted on April 12, 19-10 (101 O. L., 117), and while subsequently amended (102 O. L., 81), and its scope extended to include corporations, associations, and copartnerships engaged in insurance business other than fire, the particular provisions here under consideration were not changed. Prior thereto the Legislature had enacted legislation with reference to life insurance companies, which legislation has been amended from time to time (86 O. L., 220; 90 O. L., 345; 99 O. L., 183; 102 O. L., 509).
 

 The provisions of Section 9404, of the life insurance enactment of 1908 (99 O. L., 183), pertinent to this discussion, are:
 

 “No life insurance company doing business in Ohio shall make * * * any contract of insurance, or agreement as to such contract, other than is plainly expressed in the policy issued thereon; nor shall any such company * * *
 
 *409
 
 pay, allow, or give, or offer to pay, allow or give directly or indirectly as inducement to insurance, any rebate of premium payable on the policy, or any special favor or advantage in tbe dividends or other benefits to accrue thereon, * * * or anything of value whatsoever not specified in the policy.”
 

 The life insurance enactment of 1911 provides:
 

 “No life insurance company doing business in this state * * * shall pay, allow or give, or offer to pay, allow or give, directly or indirectly, as inducement to insurance, nor shall any person # # # receive as such inducement to insurance any rebate of premium payable on the policy
 
 * * *
 
 or any valuable consideration or inducement whatsoever.”
 

 Section 9404, General Code, as enacted in 1908, and as amended in 1911, relating to life insurance companies, and Section 9589-1, General Code, as enacted in 1910 (101 O. L., 117), relating to fire insurance companies, forbid to the various companies enumerated in the one or the other the same things in substantially the same language.
 

 The Legislature, which enacted 'Section 9404 in 1908, with reference to life insurance companies, which section contained the same provisions prohibiting rebates contained in present Section 9404, and the same provision contained in Section 9589-1 affecting fire insurance companies, also enacted as a part of the life insurance act Section 9411:
 

 “The forms prescribed by the next following six sections are established as standard forms in which policies of life insurance may be issued and deliver
 
 *410
 
 ed in this state, and in which policies of life insurance companies organized under the laws of this state may be issued.”
 

 Section 9412, “ordinary” or “limited payment,” contains the provision that “this policy shall participate in the surplus of the company and beginning not later than the end of the (insert first, second or third) policy year the company will annually determine and' account for the portion of the divisible surplus accruing hereon.”
 

 Sections 9413, 9415, 9416, and 9417, General Code, contain the same provision.
 

 It is thus apparent that the Legislature, when it enacted Section 9404, and expressly prohibited life insurance companies to “make any contract of insurance or agreement as to such contract, other than as plainly expressed in the policy issued,” and provided that no such company shall “pay or allow # * * any rebate of premium payable on the policy,” regarded a provision entitling the insured to participate in the “divisible surplus” as a compliance with the provision requiring the contract to be plainly expressed in the policy, and did not use the word “rebate” in the sense of prohibiting participation by the insured in the “divisible surplus” accruing on the policy.
 

 The Legislature did not therein define what it meant by “divisible surplus.” The relator company does not define what it means by “divisible surplus.”
 

 The provision which appears in the six standard life insurance policies prescribed by the Legisla
 
 *411
 
 ture is as vague and uncertain as is the provision in the policy of the relator.
 

 Since the Legislature, both before and after the enactment of Section 9589-1, by enactment of the several standard forms of policies declared that the provision for participation in the “divisible surplus” of the standard life insurance policy did not come within the inhibition of Section 9404, this court cannot escape the conclusion that, when it used the same language in 'Section 9589-1, it used that language in the same sense that it had theretofore used it, and did thereafter use it in Section 9404, General Code.
 

 It is, however, argued by the respondent that since Section 9589-1, General Code, contains the provision “nor shall this act prohibit a mutual fire insurance company from paying dividends to policy holders at any time after the same has been earned,” this was an attempt by the Legislature to enumerate all fire insurance companies and all acts of fire insurance companies which were not prohibited by the provisions of the act. But no language of the section could possibly be construed, even though we were unaided by the Legislature’s own interpretation of similar language in life insurance act, to prevent the redistribution of the surplus contributed by the subscribers to a mutual insurance company. The exception merely expresses what would have been obvious had the exception not been specifically named, and furnishes no aid to the interpretation of the purpose of the Legislature with reference to rebates.
 

 We therefore reach the conclusion that the pur
 
 *412
 
 pose of the fire insurance act was to prevent discrimination as to rates directly or indirectly by the insurer between its insured, and that it has not for one of its purposes the prevention of competition between insurance companies as to the rate which each may charge; that the provision in the policy of the relator herein quoted does not violate any of the provisions of Section 9589-1, General Code.
 

 The demurrer is overruled, and the writ allowed.
 

 Writ
 
 allowed•
 

 Marshall, C. J., Jones, Matthias, Day and Allen, JJ., concur.
 

 Wanamaker, J., not participating.